**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000616
12-AUG-2019
07:59 AM**

NO. CAAP-18-0000616

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
DANIEL A. GONZALEZ, Defendant-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CASE NO. 2PC161000972)


MEMORANDUM OPINION
(By: Reifurth, Presiding Judge, Chan and Hiraoka, JJ.)

Defendant-Appellant Daniel A. Gonzalez (Gonzalez) appeals from the July 24, 2018 "Order Granting Director of Health's Motion for Authorizing Treatment Over Patient's Objection" (Order Authorizing Involuntary Treatment) entered in the Circuit Court of the Second Circuit (circuit court).[1]

I.

On July 28, 2015, Plaintiff-Appellee State of Hawaiʻi (State) filed a complaint in the District Court of the Second Circuit (district court) charging Gonzalez with one count of burglary in the first degree, four counts of firearm-related offenses, and one count of terroristic threatening in the first degree.

---

[1]    The Honorable Richard T. Bissen, Jr. presided.

On August 3, 2015, the district court[2] filed an order suspending the proceedings for examination of Gonzalez pursuant to Hawaii Revised Statutes (HRS) § 704-404 (2014).

On February 5, 2016, the district court[3] found Gonzalez unfit to proceed and committed Gonzalez to the custody of the Director of Health (Director) for detention, care, and treatment.

On April 4, 2016, the Director filed a motion for an order authorizing the involuntary administration of medication for Gonzalez. The Director stated:

> DANIEL GONZALEZ has symptoms of a psychiatric disorder and has behaved dangerously. Defendant has attempted to assault another peer and his behaviors disrupt the milieu. Defendant's behavior is likely to worsen with the potential escalation of violence towards others. As a result, the Director of Health, and eventually the Director of Public Safety, is unable to provide necessary services to the Defendant or ensure the safety of Defendant, other patients and staff.

On May 5, 2016, after a hearing, the district court granted the Director's motion for an order authorizing the involuntary administration of medication.

On December 1, 2016, Gonzalez was found fit to proceed to trial. On December 5, 2016, Gonzalez waived preliminary hearing and the case was committed to the circuit court.

On January 26, 2018, the circuit court[4] filed a Judgment of Acquittal and Order of Conditional Release, "on the grounds of physical or mental disease, disorder, or defect excluding responsibility."

On April 16, 2018, the circuit court filed an Order for Temporary Hospitalization of Defendant, finding that Gonzalez had

---

[2] The Honorable Blaine J. Kobayashi presided.

[3] The Honorable Kelsey T. Kawano presided. The order reflects that the order was entered in the Circuit Court of the Second Circuit. However, this appears to be a typographical error as the proceedings were in the district court at this time and the Honorable Kelsey T. Kawano was a district court judge for the Second Circuit.

[4] Upon commitment to the circuit court, the Honorable Rhonda I.L. Loo presided on this matter until May 3, 2018, when the case was reassigned to the Honorable Richard T. Bissen, Jr.

violated the terms and conditions of his conditional release. Gonzalez was remanded to the custody of the Department of Health, pursuant to HRS § 704-413(1) (Supp. 2016).

On July 19, 2018, the Director filed a motion for an order authorizing treatment over patient's objection (Motion for Authorization of Involuntary Treatment), seeking authority to involuntarily administer medications, including psychiatric medications, and to involuntarily administer laboratory studies, as clinically necessary, to Gonzalez.

On July 24, 2018, the circuit court held an evidentiary hearing on the Motion for Authorization of Involuntary Treatment. Kenneth Booher, M.D. (Dr. Booher), a staff psychiatrist at the Hawaiʻi State Hospital (HSH) and Gonzalez's attending physician, was qualified, by stipulation, as an expert in medicine with a specialty in psychiatry. When questioned as to his diagnosis for Gonzalez, Dr. Booher testified: "Um, currently, it's psychosis, and I'll ask for the rule out or rule in for methamphetamine induced psychosis persistent type." Regarding Gonzalez's symptoms, Dr. Booher testified as follows:

> He makes odd statements that strongly suggest that he has delusional thoughts. He occasionally will speak to Navy SEAL, secret service agents. Um, he gives the impression that he has, ah, some degree of paranoia in the way he reacts to staff and (inaudible) -- when staff would set limits within he tends to overreact. He's very guarded about not wanting to talk about, ah, those -- those topics.
> Ah, when I've asked on a number of occasions explain what he means about the Navy SEALS, secret service, he says, ah, they don't want me to talk about that.

Dr. Booher testified that Gonzalez generally behaved "pretty well" but there were instances when Gonzalez lost his temper and acted out violently, punching a fire extinguisher cabinet and the wall next to it. Dr. Booher also testified that Gonzalez cursed at and threatened the hospital staff on numerous occasions.[5]

Dr. Booher testified that he also felt threatened by

---

[5] Dr. Booher testified that, for example, Gonzalez stated that he would "bang [the hospital staff] up" if he saw them outside the hospital. Gonzalez had also called an Asian nurse a "dead Jap" a few times.

3

Gonzalez and did not feel safe working with him.[6]  Dr. Booher requested that Gonzalez be transferred to a high acuity unit. Dr. Booher's request to transfer Gonzalez to another unit was based upon Dr. Booher's "Gestalt gut feeling" that Gonzalez could "lose his temper and become violent" towards Dr. Booher.  Based upon Gonzalez's escalating behavior, Dr. Booher testified that he believed that Gonzalez was an imminent danger to himself or others.  Dr. Booher further testified that there have been three or four emergency situations during which Gonzalez was given as needed medications because he showed signs of acute agitation and threatening behavior.

Dr. Booher recommended that Gonzalez be given a "later generation antipsychotic medication" on a routine basis.  Dr. Booher also testified that Gonzalez was "firmly opposed to taking any kind of medications" and Gonzalez had stated that he thought the hospital staff was trying to kill him by giving him medications.  When questioned about the proposed treatment plan for Gonzalez, Dr. Booher testified that the goal for the treatment was to improve Gonzalez's thinking so that his judgment, sense of reality, and impulse control would be better, and his aggressive behavior would be reduced.  When asked why medications were important as opposed to non-medication treatment, Dr. Booher testified that talk therapy generally does not work with delusional thinking.

Dr. Booher testified that, according to Gonzalez's record from his previous admission at HSH, Gonzalez was given medication because of aggressive behavior after he reportedly swung at a patient.  According to his medical records, after Gonzalez was given medication, his behavior improved to the point that Gonzalez was eventually discharged from the hospital.

Dr. Booher concluded that the proposed medications were

---

[6]      Recounting a meeting with Gonzalez that he had to terminate, Dr. Booher explained, "[Gonzalez] was fairly angry and was making statements, he'd like to see me in prison."

medically appropriate and there were no less intrusive alternatives available to treat Gonzalez.

On cross-examination, Dr. Booher admitted that there is some uncertainty as to the cause of Gonzalez's psychosis -- whether his symptoms were the result of neurological damage due to years of methamphetamine use or a combination of that and a mild form of genetically based schizophrenia spectrum illness. However, Dr. Booher also testified that the antipsychotic medications are helpful with treating psychosis, regardless of the cause of the psychosis.  After being questioned about the possible side effects of the proposed medication, Dr. Booher opined that the benefits of the medication outweigh the risks. Dr. Booher also reiterated that Gonzalez had responded to medications during his previous admission and that medications would likely help in the current instance with the issue of dangerous, threatening behavior.

Additional testimony was given by Shannon Shimote (Shimote), a registered nurse at HSH.  Shimote testified about instances during which Gonzalez made threatening statements to her and other nurses.

The circuit court orally granted the Motion for Authorization of Involuntary Treatment.  Gonzalez requested a stay of the order pending appeal, which the circuit court denied. Later the same day, the circuit court issued its Order Authorizing Involuntary Treatment.  Gonzalez filed a timely notice of appeal.

II.

We first note that it appears, based on the record before us, that Gonzalez is no longer in the custody of the Director.[7]  As such, we note that this appeal appears to be moot with regards to any remedy that could be provided to Gonzalez.

---

[7]     On September 27, 2018, the circuit court filed an Order Terminating Temporary Hospitalization of Defendant, releasing Gonzalez from the Director's custody.  The record does not contain any subsequent orders remanding Gonzalez to the Director's custody.

Despite the apparent mootness of this appeal, Gonzalez argues that the issue presented in this case is likely to occur again. We thus first determine whether the "capable of repetition, yet evading review" exception to the mootness doctrine applies to the facts of this case.

"The mootness doctrine is said to encompass the circumstances that destroy the justiciability of a suit previously suitable for determination." Wong v. Bd. of Regents, Univ. of Hawai'i, 62 Haw. 391, 394, 616 P.2d 201, 203 (1980). "[A] case is moot if the reviewing court can no longer grant effective relief." Kaho'ohanohano v. State, 114 Hawai'i 302, 332, 162 P.3d 696, 726 (2007) (citations omitted).  An exception to the mootness doctrine exists "[i]n cases involving a legal issue which is capable of repetition, yet evading review[.]" In re Thomas, 73 Haw. 223, 226, 832 P.2d 253, 255 (1992) (citation omitted).  The Hawai'i Supreme Court has stated:

> The phrase, "capable of repetition, yet evading review,"
> means that "a court will not dismiss a case on the grounds
> of mootness where a challenged governmental action would
> evade full review because the passage of time would prevent
> any single plaintiff from remaining subject to the
> restriction complained of for the period necessary to
> complete the lawsuit."

Hamilton ex rel. Lethem v. Lethem, 119 Hawai'i 1, 5, 193 P.3d 839, 843 (2008).

This case is an appeal from an order authorizing the involuntary administration of medication of a criminal defendant during the defendant's temporary hospitalization.  The issue is likely to arise again for Gonzalez himself and for other criminal defendants admitted at HSH.  The issue is likely to evade appellate review because, in cases of temporary hospitalization such as this, by the time an appellate court reviews the matter, it is likely that the defendant will no longer be involuntarily treated with medication and will already have left the custody of the Director.  Therefore, this case falls within the "capable of repetition, yet evading review" exception to the mootness doctrine.  We thus proceed to the merits of the case.

6

III.

On appeal, Gonzalez argues that there was insufficient evidence in the record to support the circuit court's determination that Gonzalez met the four-part test for involuntary treatment as set forth in HRS § 334-161(a) (Supp. 2017). HRS § 334-161 provides:

> [§334-161] **Criteria for issuance of court or administrative order for treatment over the patient's objection.** (a) A patient who has been committed to a psychiatric facility for involuntary hospitalization or who is in the custody of the director and residing in a psychiatric facility may be ordered to receive treatment over the patient's objection, including the taking or application of medication, if the court, or administrative panel through the administrative authorization process established pursuant to section 334-162, finds that:
> 
> (1)  The patient suffers from a physical or mental disease, disorder, or defect;
> (2)  The patient is imminently dangerous to self or others;
> (3)  The proposed treatment is medically appropriate; and
> (4)  After considering less intrusive alternatives, treatment is necessary to forestall the danger posed by the patient.
> 
> (b)  For the purposes of this section, "imminently dangerous to self or others" means that, without intervention, the person will likely become dangerous to self or dangerous to others within the next forty-five days.

Specifically, Gonzalez contends that there was insufficient evidence of the third factor -- "proposed treatment is medically appropriate." Gonzalez does not challenge the circuit court's findings that the remaining three requirements were met.

Gonzalez argues that there was no scientific basis to find that the administration of antipsychotic medication was medically appropriate for cases of methamphetamine induced psychosis. Gonzalez asserts that Dr. Booher's only basis for the appropriateness of this treatment was his "gut feeling."[8]

---

[8]      Gonzalez also cites Frye v. United States, 293 F. 1013 (D.C. Cir. 1923) and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), in arguing that Dr. Booher's testimony was not supported by scientific methods that are established and accepted in reliable treatises, texts, or published studies. To the extent that Gonzalez relies on Frye and Daubert and argues that "Dr. Booher was not qualified as an expert in clinical research and testing of drugs or protocols for establishment of manufacture[r]s' approved usage of drugs prescribed by practicing doctors such as himself[,]" we note that Gonzalez seems to be challenging the admissibility of Dr. Booher's testimony. However, Gonzalez

"Specialized knowledge which is the proper subject of expert testimony is knowledge not possessed by the average trier of fact who lacks the expert's skill, experience, training, or education." State v. Batangan, 71 Haw. 552, 556, 799 P.2d 48, 51 (1990). "'[S]pecialized knowledge' may be deemed reliable even if it is not empirically testable." State v. Fukusaku, 85 Hawai'i 462, 473, 946 P.2d 32, 43 (1997). However, "under [Hawai'i Rules of Evidence (HRE)] Rules 702 and 703, a trial court may disallow expert testimony if it concludes that the proffer of specialized knowledge is based on a mode of analysis that lacks trustworthiness." State v. Maelega, 80 Hawai'i 172, 182, 907 P.2d 758, 768 (1995) (emphasis in original).

Upon review of the record, it appears that Dr. Booher's testimony of his "gut feeling" was in response to questioning regarding the reasoning behind Dr. Booher's request that Gonzalez be transferred to a higher acuity unit. When asked to clarify what the "gut feeling" was, Dr. Booher explained, "at the time I felt that, ah, he could lose his temper and become violent towards me." It does not appear that Dr. Booher's "gut feeling" was the basis for his diagnosis of Gonzalez nor was it the basis for his reasoning that antipsychotic medication was a medically appropriate proposed treatment.

Notwithstanding Dr. Booher's testimony regarding his "gut feeling," we must determine whether there was sufficient evidence for the court to find that the administration of antipsychotic was medically appropriate for Gonzalez.

A finding of fact is clearly erroneous when: "'(1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made.'" State v. Sanford, 97

---

did not object to the admissibility of Dr. Booher's testimony regarding the medical appropriateness of the proposed medication during the circuit court proceedings and we therefore do not consider this issue on appeal.

Hawai'i 247, 253, 35 P.3d 764, 770 (App. 2001) (quoting State v. Okumura, 78 Hawai'i 383, 392, 894 P.2d 80, 89 (1995)). "Substantial evidence is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to reach a conclusion." State v. Pratt, 127 Hawai'i 206, 223, 277 P.3d 300, 317 (2012) (quoting State v. Bui, 104 Hawai'i 462, 467, 92 P.3d 471, 476 (2004)).

On appeal, the appellate court's "task is not to determine whether the evidence was 'clear and convincing,' but, rather, whether there was sufficient evidence to enable a person of reasonable caution to arrive at the circuit court's [finding of fact]." State v. Kotis, 91 Hawai'i 319, 345, 984 P.2d 78, 104 (1999).

By enacting HRS § 334-161 in 2017, the legislature explicitly provided the trial courts with authority to issue an order permitting the involuntary administration of medication to a criminal defendant. Prior to the enactment of HRS § 334-161, the Hawai'i Supreme Court, in Kotis, interpreted HRS § 334E-2(a)(9) (1993) and Hawaii Administrative Rules (HAR) § 11-175-45(b)(3) (1988) as contemplating such authority. Id. at 330-31, 984 P.2d at 89-90. In Kotis, the expert witness, qualified in the fields of medicine and psychiatry, testified that, in his opinion, the proposed antipsychotic medications would "decrease mood swings" and render the defendant "more stable emotionally, which would greatly reduce the possibility of suicide." Id. at 345, 984 P.2d at 104. The expert witness also testified that, based on the defendant's diagnosed condition of "schizoaffective disorder," characterized by anger, paranoid delusions, and extreme mood swings, id. at 324, 984 P.2d at 83, he believed the director's proposed treatment plan was medically appropriate and "standard." Id. at 345, 984 P.2d at 104. Citing this testimony, the supreme court determined that there was substantial evidence to support the circuit court's finding that the medication treatment plan was medically appropriate. Id.

Here, Dr. Booher ultimately diagnosed Gonzalez with psychosis. Dr. Booher testified that Gonzalez may suffer from a possible dual disorder.[9] The chemical component is likely methamphetamine-induced psychosis and the organic component of the dual disorder is likely delusion disorder, paranoid type. Dr. Booher testified that "medications keep a more normal balance in the chemicals in the brain" and can result in a "much slower progression or maybe even a stopping of [the] natural progression" of a psychotic disorder and its symptoms. Dr. Booher also testified that during Gonzalez's previous admission at the hospital, medication helped to reduce his aggressive behavior to the point where he was discharged. Based on Gonzalez's positive response to the medication during his previous admission, Dr. Booher opined that medication would similarly help with the issue of dangerousness in the instant matter. Dr. Booher also testified that, in his opinion and based on his experience, the proposed medications are often helpful for treating the psychosis that results from both organic psychiatric disorders and methamphetamine-induced disorders. Furthermore, Dr. Booher testified that the administration of medication was important in this case because other non-medicated modes of treatment are not effective with patients, like Gonzalez, who exhibit delusional thinking. Dr. Booher expressly testified that he believed the proposed medications to be medically appropriate.

We conclude that Dr. Booher's expert testimony, like that of the expert witness in Kotis, provided substantial evidence to enable a person of reasonable caution to arrive at the circuit court's finding that the proposed medication was medically appropriate. See Pratt, 127 Hawaiʻi at 223, 277 P.3d at 317. Accordingly, we reject Gonzalez's argument that there was insufficient evidence to support the circuit court's finding.

---

[9] A dual disorder consists of a chemical-induced disorder coupled with an organic psychiatric disorder.

10

IV.

Based on the foregoing, we affirm the July 24, 2018 "Order Granting Director of Health's Motion for Authorizing Treatment Over Patient's Objection" entered in the Circuit Court of the Second Circuit.

DATED:  Honolulu, Hawai'i, August 12, 2019.

On the briefs:

John F. Parker,
for Defendant-Appellant.

Diane K. Taira,
and Debbie L. Tanakaya,
Deputy Attorneys General,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge

11